**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ANTHONY DOWNING,

     Petitioner,

v.            CASE NO. 05-CV-70398-DT
            HONORABLE LAWRENCE P. ZATKOFF

RAYMOND BOOKER,

     Respondent.

_____/

**OPINION AND ORDER DENYING HABEAS CORPUS PETITION**

  This matter is pending before the Court on petitioner Anthony Downing's application for the

writ of habeas corpus under 28 U.S.C. § 2254.  Because the Court finds no merit in Petitioner's

claims, his habeas petition will be denied.

**I.  Background**

  Petitioner was charged in Macomb County, Michigan with possession with intent to deliver

650 or more grams of cocaine, MICH. COMP. LAWS § 333.7401(2)(a)(i), and driving with a

suspended license, second offense, MICH. COMP. LAWS § 257.904.  The charges arose from

> the discovery of approximately one kilogram of cocaine on the rear floor of a car
> being driven by [Petitioner].  Police were alerted to the possible presence of the
> cocaine inside the vehicle by a tip from a confidential informant.

*People v. Downing*, No. 233452 (Mich. Ct. App. Sept. 20, 2002).

  Petitioner stipulated at trial that his license was suspended on the day in question, and the

prosecutor alleged that Petitioner constructively possessed cocaine with intent to deliver it or aided

and abetted someone else in committing the crime.  Petitioner did not testify or present any

witnesses.  He argued through counsel that the prosecution failed to prove beyond a reasonable

doubt that he knew cocaine was present in the car he was driving.  He maintained that the cocaine could have belonged to the owner of the car or to the passenger he dropped off shortly before he was stopped and arrested.

Initially, the jury was unable to reach a unanimous decision.  However, on February 12, 2001, the jury found Petitioner guilty as charged.  The trial court sentenced Petitioner, who was thirty-five years old at the time, to concurrent terms of ninety days in jail for the driving offense and twenty to thirty years in prison for the cocaine offense.

**A.  Direct Review**

In an appeal of right, Petitioner argued that the trial court erred when it denied his motion to suppress evidence and that the evidence was insufficient to sustain his cocaine conviction.  The Michigan Court of Appeals found no merit in these claims and affirmed Petitioner's convictions in an unpublished decision.  *See id*.  On April 29, 2003, the Michigan Supreme Court denied leave to appeal.  *See People v. Downing*, 468 Mich. 893; 661 N.W.2d 239 (2003) (table).

**B.  State Collateral Review**

Petitioner challenged his sentence in a motion for relief from judgment filed in the trial court on or about September 24, 2003.  The trial court denied his motion after concluding that a change in state law was not retroactive and that Petitioner was not entitled to resentencing.  Petitioner appealed the trial court's decision, but the Michigan Court of Appeals denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D).  *See People v. Downing*, No. 251845 (Mich. Ct. App. Mar. 11, 2004).

Petitioner raised two additional arguments in an application for leave to appeal in the Michigan Supreme Court.  He argued that his sentence for the cocaine conviction constituted cruel or unusual punishment under the Michigan Constitution and that he had met the requirements of

Michigan Court Rule 6.508(D). The state supreme court denied leave to appeal for failure to establish entitlement to relief under Rule 6.508(D). *See People v. Downing*, 471 Mich. 946; 690 N.W.2d 107 (2004) (table).

## C.  The Habeas Petition

Petitioner filed his habeas corpus petition on February 2, 2005. The grounds for relief are the same claims that Petitioner presented to the state courts on direct review and to the Michigan Supreme Court on state collateral review. These claims are:

I.    The trial judge reversibly erred by denying Mr. Downing's motion to suppress evidence stemming from the stop and search of the car he was driving because it was the result of an illegal automobile stop without probable cause.

II.   The evidence was insufficient as [a] matter law to show that the cocaine found in the Mustang of Jeffrey Rucker belonged to Defendant or that he had constructive possession of the cocaine.

III.  Defendant was denied his federal and state constitutional rights to due process in violation of the U.S. CONST. amend. XIV and Mich Const 1963, Art 1 § 16 & 17.

IV.   Defendant's sentence for the offense of possession of 650 grams or more of cocaine is cruel or unusual punishment that violates Art 1 § 16 Michigan Constitution.

V.    Defendant met the requirements of M.C.R. 6.508(D).

The State argues in a responsive pleading that (1) Petitioner's first claim is not cognizable on habeas review, (2) the state court's adjudication of Petitioner's second claim was not unreasonable, and (3) Petitioner's remaining claims are barred by his procedural default of failing to raise those claims on direct appeal. Petitioner maintains in a reply to the responsive pleading that there was insufficient evidence to support his cocaine conviction. Although Petitioner apparently

3

has abandoned his other claims, the Court will review briefly all the substantive claims.[1]

## II.  Standard of Review

Habeas petitioners are entitled to relief only if they can show that the state court's adjudication of their claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id*. at 410 (emphasis in original).  "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409.

---

[1]  Petitioner's fifth "claim" is not a substantive claim.  It merely alleges that the state court was not precluded from addressing his motion for relief from judgment.

### III.  Discussion

**A.  Motion to Suppress**

The first habeas claim alleges that the trial judge erred by denying Petitioner's motion to suppress evidence of cocaine found in the car that he was driving immediately before his arrest. Petitioner asserts that the police officers' suspicion that he was transporting a kilogram of cocaine to Mt. Clemens, Michigan was based on a tip from an unreliable informant.  Therefore, according to Petitioner, the police lacked probable cause to arrest him and search the car he was driving. Petitioner claims that his rights under the Fourth Amendment were violated.

The Supreme Court has held that, when "the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 482 (1976).  Petitioner was accorded a full and fair opportunity to assert his Fourth Amendment claim in state court.  He filed a pretrial motion to suppress evidence, which the trial court denied in a reasoned opinion after conducting an evidentiary hearing.  The court stated that the warrantless arrest was proper because Petitioner committed a misdemeanor (driving while his license was suspended) in the officers' presence.  The court determined that the subsequent search of the vehicle was permissible because it was incident to a lawful arrest.   The Michigan Court of Appeals agreed that the stop, arrest, and search were proper.   Because Petitioner had a full and fair opportunity to raise his Fourth Amendment claim in state court, the claim is not cognizable here.

**B.  Sufficiency of the Evidence**

Petitioner alleges that the evidence adduced at trial was insufficient to support his cocaine conviction.  Specifically, he claims that there was no evidence that he possessed the cocaine or even

knew it was in the car. He points out that the cocaine was hidden in a cap on the rear floorboard of the car and that no one established how the cocaine got in the car. He argues that mere presence at a location where illegal drugs are found is not enough to prove constructive possession of the drugs.

### 1. Legal Framework

#### a. *Jackson v. Virginia*

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). After *Winship,* the critical question on review of the sufficiency of the evidence to support a criminal conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). It is the fact finder's responsibility to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts. *See id.* Moreover, 28 U.S.C. § 2254(d) "mandates that federal courts give deferential review to state court decisions on sufficiency of the evidence claims." *Gomez v. Acevedo*, 106 F.3d 192, 194 (7th Cir.), *vacated on other grounds sub nom Gomez v. DeTella*, 522 U.S. 801 (1997).

#### b. Possession With Intent to Deliver

The *Jackson* "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16. In Michigan, the elements of possession with intent to deliver cocaine, as applied to this case, are:

> (1) the defendant knowingly possessed a controlled substance; (2) the defendant intended to deliver this substance to someone else; (3) the substance possessed was cocaine and the defendant knew it was cocaine; and (4) the substance was in a mixture that weighed [650 or more] grams.

*People v. Crawford*, 458 Mich. 376, 389; 582 N.W.2d 785, 792 (1998). The Michigan Supreme

6

Court elaborated on the element of possession as follows:

> A person need not have actual physical possession of a controlled substance to be guilty of possessing it. Possession may be either actual or constructive. Likewise, possession may be found even when the defendant is not the owner of recovered narcotics. Moreover, possession may be joint, with more than one person actually or constructively possessing a controlled substance.
>
> . . .  It is well established that a person's presence, by itself, at a location where drugs are found is insufficient to prove constructive possession. Instead, some additional connection between the defendant and the contraband must be shown.
>
> . . .  [C]onstructive possession exists when the totality of the circumstances indicates a sufficient nexus between the defendant and the contraband. The court in *Disla* explained:
>
>> "We have stated that constructive possession may be demonstrated by direct or circumstantial evidence that the defendant had the power to dispose of the drug, or 'the ability to produce the drug . . . ,' or that the defendant had the 'exclusive control or dominion over property on which narcotics are found. . . . ' Constructive possession may also be proven by the defendant's participation in a 'joint venture' to possess a controlled substance. The ultimate question is whether, viewing the evidence in a light most favorable to the government, the evidence establishes a sufficient connection between the defendant and the contraband to support the inference that the defendant exercised a dominion and control over the substance."
>>
>> . . . .
>>
>> Just as proof of actual possession of narcotics is not necessary to prove possession, actual delivery of narcotics is not required to prove intent to deliver. Intent to deliver has been inferred from the quantity of narcotics in a defendant's possession, from the way in which those narcotics are packaged, and from other circumstances surrounding the arrest.

*People v. Wolfe*, 440 Mich. 508, 519-524; 489 N.W.2d 748, 753-55 (1992) (quoting *United States v. Disla*, 805 F.2d 1340, 1350 (9th Cir. 1986)) (internal citations omitted).

### 2.  The Facts

The evidence at trial established that, as a result of call from a confidential informant on June 9, 1999, undercover police officer Shannon Sims searched state records to obtain personal

information on Anthony Downing and Anthony Price.  Because information concerning the two names was very similar, Officer Sims concluded that one person used both names.  He also learned that Downing had a suspended driver's license.

Additional officers were briefed on the case.  The officers were told to watch for a black man driving a Ford Mustang car or a gold sports utility vehicle.  Lieutenant William Hanger observed vehicles fitting that description at 19180 Hamburg Street in Detroit.  Undercover officers subsequently conducted a surveillance at the Hamburg address.  One officer observed  two black men get in a black Ford Mustang and leave the Hamburg address at 1:00 p.m.  The officer followed the Mustang to a real estate office on Seven Mile Road in Detroit, to a residence on Kelly Road in Detroit, and then to a Farmer Jack store at Sixteen Mile and Harper in Clinton Township.  The driver of the car went in the Farmer Jack store for about ten minutes and returned to the car carrying a Farmer Jack bag.  He and his passenger then drove away in the Mustang at 1:50 p.m.  The men stopped at a residence in Mt. Clemens and got out of the car at 2:02 p.m.   The officer who was trailing the Mustang lost sight of the driver at that point and began to follow another vehicle.

A uniformed officer who had been given a description of the black Ford Mustang and its license plate number subsequently saw the Mustang and initiated a stop.  At the time, the vehicle was occupied by one man, whose driver's license bore Petitioner's picture, but the name Anthony Price.  Undercover officers arrived on the scene within seconds of the stop.  A specially trained dog alerted to the presence of narcotics in the car.  An officer then searched the car and found a brick of suspected cocaine on the floor of the back passenger compartment of the car.  The brick was wrapped and stuffed in a ski cap.  A glove, an ice scraper, and other things were resting on top of the cap, and a Farmer Jack bag had been placed on top of those items.   Inside the Farmer Jack bag were baking soda and baggies.  A subsequent search of Petitioner's home on Hamburg Street in

8

Detroit uncovered a Michigan identification card with Petitioner's name on it.

Petitioner was identified at trial as the driver of the Ford Mustang, which police officers followed and stopped near Sixteen Mile and Gratiot on June 9, 1999. A forensic chemist testified that the substance found in the ski cap on the floor of the Ford Mustang was cocaine and that it weighed 1003.7 grams before testing and 1003.6 grams after testing.

### 3. Analysis

No one disputed that Petitioner was driving the targeted Ford Mustang on June 9, 1999. It also was not disputed that Jeffrey Rucker owned the Mustang, that Ernest Jackson had been a passenger in the car, and that the brick-like substance found in the car consisted of more than 650 grams of cocaine. The question was whether Petitioner knowingly possessed the cocaine with intent to deliver it to someone else.

Petitioner was the only person seen driving the Ford Mustang on June 9, 1999, and he was the only person in the car when he was stopped for driving on a suspended license. The traffic stop occurred fifteen to thirty minutes after Petitioner was last seen with a passenger. His dominion and control over the car where the cocaine was found established a link between the cocaine and him. He maintained at trial that the real suspect was Jeffrey Rucker, who owned the car, or Ernest Jackson, who was a passenger in the car until shortly before Petitioner was stopped and arrested. However, it is unlikely that Rucker or Jackson would have left cocaine worth up to $32,000 in the car and then loaned the car to Petitioner unless Petitioner were part of a joint venture.

In addition, Petitioner's conduct supported the conclusion that he knew there was cocaine in the car and that he intended to deliver it. He was observed going in a Farmer Jack store and placing a Farmer Jack bag in the car. The bag was found near the cocaine, and it contained the ingredients needed to transform the powder cocaine into crack cocaine and then package it for

resale.

Petitioner contends that there was no evidentiary basis for concluding that the contents of the Farmer Jack bag were ingredients needed to cook and repackage the cocaine. Although there was no specific evidence on the issue of repackaging, undercover officer Shannon Sims testified that powder cocaine could be cooked with baking soda and water to make it into crack cocaine. Officer Sims further testified that crack cocaine normally is sold for $20 in "rocks" consisting of one-tenth of a gram. Sims estimated that the brick of cocaine found in the car that Petitioner was driving was worth between $25,000 and $32,000. He claimed that a kilogram of powder cocaine could be worth as much as $200,000 on the street if "cooked" into crack cocaine. (Tr. Feb. 7, 2001, at 19-22.) It is not logical to think that the cocaine found in the Mustang was intended for personal use. It was too great a quantity and too expensive for an individual user. Additionally, no drug paraphernalia was found during a search of Petitioner's home.

Circumstantial evidence and reasonable inferences arising from the evidence were sufficient to establish that Petitioner possessed the cocaine with intent to deliver it. *See Wolfe*, 440 Mich. at 526; 489 N.W.2d at 756. A rational juror could have inferred from the evidence that Petitioner actually or constructively and jointly or singly possessed more than 650 grams of cocaine. A rational juror also could have inferred that Petitioner intended to cook the cocaine, repackage it in smaller quantities, and sell it to someone else. Even if the jurors believed that the cocaine belonged to Jeffrey Rucker or Ernest Jackson, they could have concluded that Petitioner aided and abetted Rucker or Jackson in possessing over 650 grams of cocaine with intent to deliver the cocaine. The State was not required to "rule out every hypothesis except that of guilt beyond a reasonable doubt, and the reviewing court need not be convinced of [the] petitioner's guilt beyond a reasonable doubt." *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995).

10

The state court's conclusion that the evidence was sufficient to sustain Petitioner's cocaine conviction was neither contrary to, nor an unreasonable application of, *Jackson.*  Although the state court of appeals did not cite *Jackson* in its opinion, it used the same standard.  The state court was not required to cite relevant Supreme Court cases or even be aware of them for its decision to be a reasonable application of Supreme Court precedent.  *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam);  *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006).  It is sufficient that the state court's result and reasoning were consistent with *Jackson.  See Packer*, 537 U.S. at 8; *Slagle*, 457 F.3d at 514.

## C.  Retroactivity of a State Statute

### 1.  Respondent's Procedural Default Argument

The third habeas claim alleges that an amendment to the narcotics statute which Petitioner allegedly violated should apply retroactively to him.  Respondent argues that this claim is procedurally defaulted because Petitioner failed to raise the claim on direct review of his convictions and because the state courts denied relief pursuant to Michigan Court Rule 6.508(D).[2]

---

[2]  A procedural default is "a critical failure to comply with state procedural law. . . ." *Trest v. Cain*, 522 U.S. 87, 89 (1997).  Federal courts may not consider procedurally defaulted claims unless "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

The state procedural rule in question here reads in relevant part:

**(D) Entitlement to Relief.**  The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion

. . . .

(3) alleges grounds for relief, other than jurisdictional defects, *which could have been raised on appeal from the conviction and sentence* or in a prior motion under this subchapter, unless the defendant demonstrates

11

A state court's reliance on Rule 6.508(D) can be a sufficient basis for this Court to conclude that the state court's order was based on a procedural bar. *See Burroughs v. Makowski*, 282 F.3d 410, 413-14 (6th Cir. 2002), *modified on other grounds*, 35 Fed. Appx. 402 (6th Cir. 2002). However, a claim is not procedurally defaulted if the Michigan Supreme Court merely cited Rule 6.508(D) without reference to any subsection and if the lower state courts did not invoke a procedural bar, but denied relief on the merits. *Abela v. Martin*, 380 F.3d 915, 922-24 (6th Cir. 2004).

The Michigan Court of Appeals and the Michigan Supreme Court cited Rule 6.508(D) in their orders denying leave to appeal the trial court's denial of Petitioner's post-conviction motion. The orders did not cite a subsection of the rule, however, and the trial court adjudicated Petitioner's retroactivity claim on the merits. Therefore, Petitioner's retroactivity claim is not procedurally defaulted. Even if the claim were procedurally defaulted, procedural default is not a jurisdictional bar to review of the merits of an issue. *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), *cert. denied*, __ U.S. __, 126 S. Ct. 1032 (2006). Thus the Court will proceed to address the merits of the claim.

**2. On the Merits**

Petitioner was sentenced on March 12, 2001, to a minimum of twenty years in prison for the cocaine conviction because that was the mandatory minimum penalty for the offense at the time. Effective March 1, 2003, the statute was amended to eliminate the twenty-year mandatory minimum sentence for possession with intent to deliver 650 or more grams of cocaine. *See* MICH. COMP.

---

(a) good cause for failure to raise such grounds on appeal or in the prior motion, and
(b) actual prejudice from the alleged irregularities that support the claim for relief.

Mich. Ct. Rule 6.508(D)(3) (emphasis added).

LAWS § 333.7401.

Petitioner argues that the amendment should be applied retroactively to him and that he should be re-sentenced under the state sentencing guidelines. The trial court addressed this issue on collateral review and concluded that Petitioner was properly sentenced under the law as it existed prior to the amendment.

The Michigan Court of Appeals has concluded in a published opinion that amendments to the statute in question apply prospectively to offenses committed on or after the effective date of the legislation (March 1, 2003). *See People v. Doxey*, 263 Mich. App. 115, 122-23; 687 N.W.2d 360, 364-65 (2004); *see also People v. Dailey*, 469 Mich. 1019; 678 N.W.2d 439 (2004) (table). Because Petitioner committed an offense in violation of MICH. COMP. LAWS § 333.7401 before March 1, 2003, he was correctly sentenced to the mandatory minimum sentence of twenty years. The state court's interpretation of an issue of state law is binding on this Court. *Bradshaw v. Richey*, 546 U.S. 74, __, 126 S. Ct. 602, 604 (2005). In fact, state courts generally are free to say whether their cases apply retroactively. *Gt. Northern Ry. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 364 (1932). "[T]he decision of a state court to limit the retroactive effect of a rule involving state law does not raise a Federal question." *Bowen v. Foltz*, 763 F.2d 191, 193 (6th Cir. 1985).

Petitioner nevertheless cites *Teague v. Lane,* 489 U.S. 288, 310 (1989), in support of his claim. A plurality of the Supreme Court held in *Teague* that a new constitutional rule of criminal procedure does not apply on habeas corpus review if the case became final before the new rule was announced. Two exceptions to the rule exist. A new rule may be applied retroactively if it is beyond the power of the criminal law-making authority to proscribe or if the rule implicates the fundamental fairness of the trial and is a watershed rule of criminal procedure. *Id*. at 311.

Petitioner's reliance on *Teague* is misplaced, however, because "*Teague* is concerned with

13

the retroactivity of new constitutional rules of criminal procedure." *Muth v. Frank*, 412 F.3d 808,

816 (7th Cir.) (citing *Bousley v. United States*, 523 U.S. 614, 620 (1998)), *cert. denied*, __ U.S. __,

126 S. Ct. 575 (2005). Petitioner is arguing in favor of retroactive application of a state statute, not

a new federal constitutional rule of criminal procedure. His claim has no merit.

**D.  Cruel or Unusual Punishment**

Petitioner's fourth and final substantive claim alleges that his sentence of twenty to thirty

years is cruel or unusual punishment under the Michigan Constitution. This claim was not raised

at all levels of state court review when Petitioner had an opportunity to do so. The claim is

unexhausted or procedurally defaulted for that reason. *See* 28 U.S.C. § 2254(b)(1); *O'Sullivan v.*

*Boerckel*, 526 U.S. 838, 845, 847 (1999); *Gray v. Netherland*, 518 U.S. 152, 161 (1996). However,

because the claim lacks merit, the Court will briefly review it.[3] Review is *de novo*, because no state

court adjudicated the merits of the claim. *Higgins v. Renico*, 470 F.3d 624, 630 (6th Cir. 2006)

(quoting *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

The fact that Petitioner's sentence may be cruel or unusual punishment under state law is not

a basis for habeas corpus relief. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465

U.S. 37, 41 (1984). "In conducting habeas review, a federal court is limited to deciding whether a

conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; *Rose*

*v. Hodges*, 423 U.S. 19, 21 (1975) (per curiam)." *Estelle v. McGuire,* 502 U.S. 62, 68 (1991).

Furthermore, a plurality of the Supreme Court held in *Harmelin v. Michigan*, 501 U.S. 957

---

[3]  Neither the doctrine of exhaustion of state remedies, nor the doctrine of procedural default, are bars to substantive review of a meritless claim. *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005) (stating that the exhaustion requirement is not a jurisdictional one), *cert. denied sub nom Houk v. White*, __ U.S. __, 127 S. Ct. 578 (2006), *and cert. denied sub nom White v. Houk*, __ U.S. __, 127 S. Ct. 581 (2006); *Howard*, 405 F.3d at 476 (noting that procedural default is not a jurisdictional bar to review on the merits).

(1991), that "the Eighth Amendment contains no proportionality guarantee." *Id*. at 965. The Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id*. at 1001 (Kennedy, J., concurring). The Supreme Court also concluded in *Harmelin* that life imprisonment without the possibility of parole for possession of more than 650 grams of cocaine was not cruel and unusual punishment. If life imprisonment for mere possession of more than 650 grams of cocaine is not cruel and unusual punishment, Petitioner's sentence of twenty to thirty years for possession with intent to deliver more than 650 grams of cocaine is not cruel and unusual punishment under the Eighth Amendment.

### IV.  Conclusion

The state courts' rejection of Petitioner's claims did not result in decisions that were contrary to, or unreasonable applications of, Supreme Court precedent. Accordingly, the application for a writ of habeas corpus is DENIED.


s/Lawrence P. Zatkoff_____
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  April 16, 2007




CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of

record by electronic or U.S. mail on April 16, 2007.

s/Marie E. Verlinde
Case Manager
(810) 984-3290